### · JULIUS SPAHN

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 13, 1891.*

· 1. CRIMINAL LAW—*identification of accused—proof of burglary.* On the trial of two for burglary, the person whose room was entered and who was robbed, testified positively that the defendants were the parties who robbed him. The only denial was in the testimony of the defendants, and one of them did not deny, in terms, that he was present and aided in the burglary, and admitted that he was indicted for robbery in another case. The burglary was not denied : *Held,* that the evidence was sufficient to sustain a conviction.

2. INSTRUCTIONS—*covered by others given.* Although an instruction asked may state a correct proposition of law, there will be no error in refusing it when it is fully and completely covered by one of the other instructions given to the jury.

3. BILL OF EXCEPTIONS—*taken most strongly against party taking the same.* Where the bill of exceptions in the case of a criminal prosecution shows that the defendant, while on the stand as a witness, disclosed the fact of his indictment in another case, without objection, but fails to show whether the disclosure was made on the direct or cross-examination, it will be presumed it was made on the direct examination, as a bill of exceptions is taken most strongly against the party taking the same.

4. NEW TRIAL—*newly discovered evidence—cumulative.* The rule is well settled that to authorize a new trial on the ground of newly discovered evidence, it must appear that the evidence has been discovered since the trial, and that the party has not been guilty of negligence in not discovering and producing it on the former trial. Nor will a new trial be granted when such evidence is merely cumulative, and is not conclusive in it character.

5. SAME—*absence of witness.* If a defendant in a criminal case goes to trial without the presence of a witness whom he had subpœnaed, and without asking for an attachment for him or a continuance, a new trial will not be given him on account of the failure of the witness to appear, when it appears that the defendant had notice of the facts he could prove by such witness, and the testimony of such witness is only cumulative.

6. PRACTICE—*remarks of State's attorney in argument.* On a trial for burglary the assistant State's attorney, in his argument to the jury, re-

marked: "Gentlemen of the jury, we know these two defendants are robbers and burglars,—they have been in trouble before;" and also, "We know this man S. is guilty, because he is indicted in another case in this court." There was proof that the defendants did commit the burglary: *Held,* that the first part of the remark was not improper under the evidence, but that the last of the remarks was improper, but not of such a grave character as to call for a reversal.

Writ of Error to the Criminal Court of Cook county; the Hon. J. S. Grinnell, Judge, presiding.

Mr. R. A. W. James, for the plaintiff in error:

Where one is put on trial for a grave crime involving his liberty, it is highly improper for the public prosecutor to do or say anything the only effect of which is to inflame the passions or arouse the prejudices of the jury. *Earle* v. *People,* 99 Ill. 123; *Yoe* v. *People,* 49 id. 410.

The remarks of the public prosecutor in this case were highly improper, and prejudicial to the accused, and probably influenced the jury.

While the granting of a new trial was discretionary with the court of original jurisdiction, yet the Supreme Court will grant a new trial if the judges have serious doubt of the guilt of the accused. *Rafferty* v. *People,* 72 Ill. 37.

At common law it is not ground for error to refuse a new trial, but where by statute error lies, the refusal of the lower court to grant a new trial will be reversed if it plainly appear that the court below was wrong. Wharton on Crim. Pl. and Pr. sec. 902.

The evidence of Blake's identity was strong, amounting to proof. The evidence of Spahn's identity was weak and unsatisfactory, besides which he could, if allowed a new trial, have shown an *alibi.*

If the Supreme Court is satisfied that the accused has not had a fair and impartial trial, the judgment will be reversed. *McDonald* v. *People,* 126 Ill. 151.

It was error in the trial court not to give the instruction asked as to presumption of innocence.   It is not deemed necessary to cite authorities.

Mr. George Hunt, Attorney General, for the People:

Complaint is made to the refusal of a new trial on two grounds,—first, Spahn could, if allowed a new trial, prove an *alibi* by Mary Granger; and second, improper remarks of counsel in the argument.

Spahn, in his own behalf, testified that Mrs. Granger was in the house where he claims to have been on the night of the burglary.   He knew of this witness at that time, and knew of her opportunities for knowing his whereabouts, and the importance of her testimony, if true.   The motion alleges she had been subpœnaed, and the abstract shows no motion for a continuance to procure her attendance.   The evidence seems, therefore, not to be newly discovered, and to be thought of little importance to defendant below.   Further, Spahn himself testified to an *alibi*, and the testimony of Mrs. Granger, if procured, would only be cumulative, and by no means conclusive.

The remarks of the State's attorney were based on the evidence which the defendant himself offered, and thereby made it proper subject of comment.   He testified that he had been indicted for robbery and receiving stolen property in another case.   This furnished a basis for saying he had been in trouble before, and that he had been indicted in another case.   The evidence doubtless satisfied the prosecuting attorney that the defendants were robbers and burglars.

The identification of the defendants was complete and positive, and there seems to be no doubt as to the guilt of Spahn.

Mr. Justice Bailey delivered the opinion of the Court:

Julius Spahn was indicted jointly with James Blake for the crime of burglary, and both defendants being tried on a plea

of not guilty, were convicted, and the punishment of each was fixed by the jury at imprisonment in the penitentiary for the term of eight years. Blake was awarded a new trial, but Spahn's motion for a new trial was overruled, and sentence was pronounced upon him in accordance with the verdict, and the record is now brought here at his instance by writ of error.

It is urged on his behalf that, in view of all the evidence, there is a reasonable doubt as to his guilt, and that the judgment should therefore be reversed and the cause submitted to another jury. The fact that the burglary was committed as charged does not seem to be controverted, the only question raised upon the evidence being, that it does not sufficiently identify Spahn as one of the persons who committed it.

The burglary charged was committed by breaking and entering the dwelling house of Thomas Collins at number 201, Center avenue, Chicago. Collins was called as a witness at the trial, and not only testified to the commission of the burglary, but positively identified the prisoners on trial as the persons who committed it. He testifies, in substance, that at about half past eight or nine o'clock in the evening on May 16, 1890, after closing his store, he went up stairs in the house where he lived, which was next door, and turned down all the lights low; that between one and two o'clock in the night he was awakened by a scream, and got out of bed and went into the front room where he was met by Spahn, who struck him a blow on the head with a pistol and knocked him down; that Spahn asked him for his money, and that witness replied that he had none; that Spahn called him a vile name and threatened to kill him if he did not give up his money; that Blake then came in and held a revolver to witness' head while Spahn went into witness' bed room and took $25 in money out of his pants; that they then went down the front stairs and out of the front door as the police were coming up the back stairway. No attempt seems to have been made on cross-examination to weaken or disturb the positiveness with which the witness iden-

tified both of the defendants as the parties who committed the burglary.

Mary Corcoran, who at the time was at work for Collins, testifies that she was awakened by a noise and got out of bed and went into the kitchen and looked out of the back window and saw Blake opening the door with a key or some other instrument; that Blake came into the kitchen accompanied by another man, but she is unable to identify the other man as Spahn; that when they got into the kitchen, they ran by her into the front room, and that she ran down the back stairs and got two policemen and that as the policemen were going up the back stairs the men ran down the front stairs and out of the front door. Spahn was arrested the next day by a policeman, but when arrested no money was found on his person.

The only evidence contradicting the testimony of Collins is that of the defendants, both of whom were examined as witnesses. Spahn testifies that at eleven o'clock that night he was standing at the corner of Halsted and Congress streets; that from there he went home, reaching home at about a quarter past eleven, and stayed at his house all night; that he has but two rooms, a bed-room and a front room; that he slept in the bed-room with his wife, and that a Mrs. Granger slept in the front room; that he got up at about six o'clock in the morning and went over to his father's who was sick; that after that he went back to Harrison street, where he met an officer who arrested him; that he was not allowed to see anybody for four days, and did not know what he was arrested for; that he had not spoken to Blake for more than four months, but saw him once about two months and a half before the date of the burglary without speaking to him. The witness testifies that he was then under indictment in another case for robbery and receiving stolen property. He nowhere denies in terms that he was present at or participated in the burglary charged in the indictment in this case.

Blake testified that he had nothing to do with said burglary, but that on the night it was committed he was at home with his wife; that he lived about three-quarters of a block from Collins; that he knew Spahn, but had not seen him for several months before witness' arrest; that he and Spahn had had a quarrel and were having nothing to do with each other; that witness knew nothing about said burglary until several days after it was committed.

The foregoing is substantially the evidence in the record bearing upon the question of the identity of Spahn and Blake as the parties who committed the burglary. If the jury believed Collins, they were justified in finding a verdict of guilty. If, on the other hand, they believed the testimony of the defendants, it was doubtless their duty to acquit. The question thus presented was a question of fact which it was the peculiar province and duty of the jury to determine, and after carefully considering the entire record, we are unable to say that their verdict was not fully warranted by the evidence. They saw and heard the prosecuting witness, and were much better able to judge than we can be in relation to his fairness and candor, and as to the weight and credibility to which his testimony is entitled. They also saw and heard the defendants, and were better able to judge from their appearance, conduct and manner of testifying, how far their testimony was entitled to credit, and to what extent their interest in the result of the trial should be held to discredit them. We are unable to say, from anything appearing in the evidence, that the jury have been actuated by passion or prejudice or that they were not warranted in finding that the defendants were proved guilty beyond a reasonable doubt.

It is insisted that a new trial should have been granted for the purpose of enabling Spahn to avail himself of the testimony of Mrs. Granger, who, as he claims was the occupant of his front room on the night of the burglary. This contention can not be sustained for several reasons. First, the testimony of

Mrs. Granger is not newly discovered evidence. It is not pretended that Spahn was not just as well aware, at and before the trial, of the facts to which Mrs. Granger could testify and their relevancy and importance in making out his defense, as he was at the time he interposed his motion for a new trial. If she occupied his front room that night he certainly knew it at the time, and if she was in a position to be able to testify to any facts tending to prove for him an alibi, he must have known that also. That he knew of said evidence before the trial is practically admitted, and he even claims that he had subpœnaed said witness to appear and testify at the trial.

Again, he does not appear to have exercised due diligence in procuring said evidence. So long as the witness was subpœnaed, he should have applied to the court for a compulsory process to enforce her attendance and that failing, he should have applied to the court for a continuance in order to obtain her testimony. But having gone to trial in her absence without exhausting all the means at his command to compel her attendance, the absence of her testimony is no ground for a new trial.

Mrs. Granger's testimony, moreover, if produced, would be only cumulative, and would be by no means conclusive in its character. At best it would have only been corroborative of the testimony already given by Spahn. It appears elsewhere in the evidence that there was a window to the bed-room in which Spahn claims to have spent the night by means of which it would have been easy and practicable for him to leave his room without passing through the room where Mrs. Granger slept, and she, having been produced by order of the court for oral examination, admitted that she did not know whether Spahn left his room that night or not; that she slept most of the night, and that he might have left his room without her knowledge.

The rule is well settled that, to authorize a new trial on the ground of newly discovered evidence, it must appear that the

·evidence has been discovered·since the trial, and that the party; has not been guilty of negligence in not discovering and pro·ducing it on the former trial. *Schlencker* v. *Risley*, 3 Scam. 483; *Crozier* v. *Cooper*, 14 Ill. 139; *Stetham* v. *Shoultz*, 17 id. :99; *Calhoun* v. *O'Neal*, 53 id. 354; *Wood* v. *Echternach*, 65 id. 149; *Tobin* v. *The People*, 101 id. 121; *Isaacs* v. *The People*, 118 id. 538; *Klein* v. *The People*, 113 id. 596. Nor will a new trial be granted on the ground of newly discovered evi·dence where such evidence is merely cumulative and is not ·conclusive in its character. *Laird* v. *Warren*, 92 Ill. 204; *Higgins* v. *The People*, 98 id. 519; *McCollom* v. *I. and St. L. R. R. Co.* 94 id. 534; *Abrahams* v. *Weiller*, 87 id. 179; *Schoen·field* v. *Brown*, 78 id. 487; *McKenzie* v. *Remington*, 79 id. 388; *Krug* v. *Ward*, 77 id. 603; *Chapman* v. *Burt*, id. 339; *Fuller* ·v. *Little*, 61 id. 21; *Martin* v. *Ehrenfels*, 24 id. 187; *Bulliner* v. *The People*, 95 id. 394. The motion for a new trial, so far as it was based upon this·ground, was properly overruled.

Error is assigned upon the refusal of the court to give to the jury one instruction asked on behalf of the defendant, stating the rule of law as to the *prima facie* presumption of innocence to which the defendants were entitled, and the ex·tent to which the jury were bound by such presumption. The· instruction refused stated a correct proposition of law, but there was no error in refusing it, as it was fully and com·pletely covered by one of the instructions given to the jury at the instance of the defendants. The court having once given ·to the jury the rule of law contended for clearly and adequately, was under no obligation to repeat the rule in another instruc·tion. *Thompson* v. *Duff*, 119 Ill. 226; *Baird* v. *Trustees of Schools*, 106 id. 657; *Chicago* v. *Stearns*, 105 id. 554; *Freid·berg* v. *The People*, 102 id. 160; *City of Bloomington* v. *Perdue*, 99 id. 329.

The only remaining point to which our attention is called relates to certain remarks made by the assistant State's attor·. ney in his argument to the jury. Those remarks, as shown·

35—137 ILL.

by the bill of exceptions, were these: "Gentlemen of the jury, we know these two defendants are robbers and burglars. They have been in trouble before;" and "We know this man Spahn is guilty, because he is indicted in another case in this court." The first of these remarks, so far as we are able to see, was not particularly exceptionable. There was before the jury the direct and positive testimony of an eye-witness that the defendants had committed the burglary and larceny for which they were being tried, and we are not prepared to say that, in view of such testimony, an assertion by counsel that he knew or that the jury knew that the defendants were robbers and burglars was a species of comment upon the evidence which it was the duty of the court to restrain counsel from indulging in. Assuming the correctness and truthfulness of the people's witness—and that was an assumption which the state's attorney was authorized to make in his argument—the guilt of the defendants of the offense charged was a fact known to counsel and the jury, so far as a fact can be known from human testimony. The residue of the remark, viz, that the defendants had been in trouble before, was justified at least so far as Spahn, the only party now complaining was concerned, by the fact appearing in his own testimony, that he was then under indictment in another case for robbery and receiving stolen property. That fact, as it may be observed, was disclosed by the defendant while on the stand without objection by either party, and the bill of exceptions fails to show whether the disclosure was made on his direct or cross-examination. The bill of exceptions being the pleading of the plaintiff in error, must be taken most strongly against him, and it must therefore be presumed that the statement was a matter volunteered by him on his direct examination.

The second of the two remarks complained of is justly subject to criticism. The fact that Spahn was under indictment for another offense had no tendency to prove him guilty of the offense for which he was on trial, and it was therefore im-

proper and illegitimate for counsel to argue or state to the jury that his guilt in this case was established or known because he was under indictment in the other. But some reliance must be placed upon the common sense and discrimination of the jury, where counsel seek to draw improper inferences from the evidence. While arguments of that character are not to be approved or looked upon with favor still they will not ordinarily be deemed sufficient to necessitate a reversal of the judgment unless they are of such a character as to raise an inference that the jury were probably misled or improperly influenced thereby. We do not think the remark complained of in this case is of that character.

We find no material error in the record and the judgment of the Criminal Court will accordingly be affirmed.

*Judgment affirmed.*