## David Stephens, Appellant, v. John A. Neilson, Appellee.

### Gen. No. 5294.

1. INSTRUCTIONS—*what justifies giving.* The giving of an instruction which otherwise might be improper is sometimes justified by comments of opposing counsel made in argument.

2. VERDICTS—*when not disturbed.* A verdict will not be set aside as against the weight of the evidence even though the court would have been better satisfied if the verdict had been the other way.

Distress for rent. Appeal from the Circuit Court of Lee county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed March 11, 1910.

BROOKS & BROOKS, for appellant.

WOOSTER & EDWARDS, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This case was before us in Stephens v. Neilson, 142 Ill. App. 263, where the facts are stated. Neilson had rented some land of Stephens and had given three promissory notes for the rent, each dated August 26, 1905, the first for $300 payable March 1, 1906, the second for $250, payable September 1, 1906, and the third for $350, payable December 1, 1906, each with interest at seven per cent per annum after date until paid. On June 25, 1906, after the maturity of the first note and before the maturity of the second, Stephens issued a distress warrant for $238.84, it being conceded that there had been a small payment on the first note. Neilson claimed that he had made another payment of $250 which more than paid the first note in full. Upon the trial he presented a receipt for $250 dated February 20 and purporting to be signed by Stephens. Stephens admitted the signature to be his, but denied

that he had received such a payment or given such a receipt. The paper upon which the receipt was written was narrow, and Stephens claimed that it had been cut from some other paper which had his signature to it, and the receipt written above his signature. Neilson testified that he paid that money to Stephens at that time and drew this receipt, and that Stephens thereafter signed it. Stephens produced experts who were of the opinion that the signature had been written before the receipt. The sole question is whether the $250 was paid by Neilson to Stephens. Neilson testified that he got the money from a certain other party, and that party testified for Stephens that he did not pay that amount of money to Neilson at the time named. Two other witnesses for Stephens, who seemed to be disinterested, testified to conversations with Neilson in April and June following which could not have been held if Neilson had already paid the first note in full. Either they are mistaken as to the exact language of these conversations, or Neilson did not understand what they were talking about, or there was a mutual misunderstanding between Neilson and the witness as to the subject of the conversation, or the first note had not been paid at that time. If this were a matter of first impression, our inclination would be to hold that the preponderance is against the payment having been made. But there was evidence tending to impeach the reputation of Stephens for truth and veracity, and two juries have found the issues for Neilson, and two trial judges have approved those verdicts. Both juries and both judges saw the witnesses and especially saw Stephens and Neilson on the witness stand. They may have seen that in the demeanor of those witnesses and in their manner of testifying which justified confidence in the truth of the one rather than the other. We do not feel warranted in disturbing a second verdict for Neilson which has the approval of the trial judge.

Stephens testified that he lived in Princeton, but various witnesses testified that they had known him to be staying in the towns of Amboy, May and East Grove, and some of the witnesses did not know that he lived at any other place. We infer that he owned land in each of those adjoining towns. Witnesses testified that his reputation for truth and veracity in those towns was bad. The court, at the request of Neilson, gave an instruction to the effect that if the jury believed from the evidence that Stephens lived in the neighborhood of those towns long enough to make a reputation for truth and veracity there, and that such reputation was known by those who were his neighbors while he lived in that neighborhood, then it was competent to show by such neighbors such reputation for truth and veracity by way of impeachment, though he did not now reside in such neighborhood but resided elsewhere. It is contended that it was error to give this instruction. It is supported by Blackburn v. Mann, 85 Ill. 222. We think it might well have been omitted, and yet there may have been such comment by appellant's counsel upon the fact that the impeaching testimony was not drawn from Princeton as made it important that this should be given. The court gave several instructions on the subject of impeachment at the request of appellant and the jury could not have been misled upon that subject.

While we would be better satisfied by a verdict and a judgment for Stephens, yet we see no sufficient grounds for disturbing the judgment under the circumstances stated.

The judgment is therefore affirmed.

*Affirmed.*